IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GLEN STEWART, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 3:10-cv-0494 |
| v. | ) |
| | ) JUDGE WILLIAM J. HAYNES |
| AMERICAN EAGLE AIRLINES, INC., | ) MAGISTRATE JUDGE JOHN BRYANT |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
DEFENDANTS AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, AMERICAN
AIRLINES, INC., AND AMERICAN EAGLE AIRLINES, INC.
TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF TEXAS**

The Northern District of Texas is the appropriate and most convenient forum for this litigation. All of the Defendants maintain headquarters or reside in that district, all of the key witnesses reside in that district, and all of the relevant events occurred there, including the alleged lack of notice to Plaintiffs of the arbitration proceeding at issue and the arbitration proceeding itself. This case has virtually no connection to this forum; only one named Plaintiff resides in this district while the remaining approximately 1,200 putative class members, "are disbursed [sic] throughout the country." Compl. ¶ 23. Accordingly, Defendants Air Line Pilots Association, International ("ALPA"), American Airlines, Inc. ("American" or "AA"), and American Eagle Airlines, Inc. ("Eagle") submit this memorandum in support of their joint motion to transfer this case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

## STATEMENT OF FACTS

### I. THE PARTIES

Plaintiffs are former pilots of Trans World Airlines, Inc. ("TWA"), who subsequently became employed by American after the merger of AA and TWA. Compl. ¶¶ 11-14. Two of the four named Plaintiffs (Krakowski and Young) reside in Missouri, while one (Dhillon) resides in Illinois. Compl. ¶¶ 1-4. Only one named Plaintiff (Stewart) resides in Tennessee. Compl. ¶¶ 1-4. Other members of the putative class of 1,200 are "disbursed [sic] throughout the country." Compl. ¶¶ 21-23.

Defendant Allied Pilots Association ("APA") is the certified collective bargaining representative of the American pilots. APA is headquartered in Fort Worth, Texas. Compl. ¶ 8. APA and AA are parties to a collective bargaining agreement which includes the "Flow-Through Agreement" referenced in Plaintiffs' Complaint. Declaration of Wayne Klocke ("Klocke Decl.") ¶ 5. On information and belief, there appears to be no connection between APA and Tennessee whatsoever. Klocke Decl. ¶ 13.

Defendant ALPA is an unincorporated labor organization and the certified collective bargaining representative of the Eagle pilots. Klocke Decl. ¶ 2. ALPA maintains an office in Euless, Texas which administers the "Flow-Through Agreement" at issue in the arbitration underlying this litigation. Klocke Decl. ¶¶ 4-5.[1]

Defendant Eagle is a wholly-owned subsidiary of American. Both American and Eagle are headquartered in Fort Worth, Texas. Declaration of James Anderson ("Anderson Decl.") ¶ 2;

---

[1] Although ALPA has a Memphis office, that office administers the collective bargaining agreements for FedEx Express and Pinnacle Airline pilots. The Memphis office is not involved in the negotiation or administration of the ALPA-Eagle collective bargaining agreement or the Flow-Through Agreement. Klocke Decl. ¶ 12. ALPA has no offices in or any other connection to Nashville.

Declaration of Cathy McCann ("McCann Decl.") ¶ 2. Both American and Eagle administered the Flow-Through Agreement at issue from their Texas offices. Anderson Decl. ¶ 6; McCann Decl. ¶ 6.

## II. THE CLAIM

In 1997, ALPA, APA, Eagle, and American executed a four-party Flow-Through Agreement that, broadly stated, allowed Eagle jet captains to "flow up" to American at times that American was training new hire pilots and allowed pilots on the American seniority list to "flow down" to Eagle during pilot furloughs at American. The Flow-Through Agreement contains a four-party grievance and arbitration procedure to resolve disputes arising under it. Klocke Decl. ¶ 5.

In March 2008, ALPA filed a grievance under the Flow-Through Agreement (the "Grievance"). Compl., Ex. 1 at 2. The Grievance was prepared, filed, and presented by ALPA's Euless, Texas office. Klocke Decl. ¶¶ 6-7. With the exception of some work done by outside counsel, all other processing of the Grievance took place at the Texas offices of American, Eagle, and APA. Anderson Decl. ¶ 6; McCann Decl. ¶ 6; Klocke Decl. ¶ 9. An arbitration hearing on the Grievance was held before Arbitrator George Nicolau in Fort Worth, Texas in June 2009. Klocke Decl. ¶ 10. Arbitrator Nicolau issued an award in October 2009. Klocke Decl. ¶ 10; Compl., Ex. 1 at 26. Subsequent hearings on the remedy were held in Fort Worth, Texas in February 2010 and in Washington, D.C. in March 2010. Klocke Decl. ¶ 11. Members of the putative class testified at the hearing in Fort Worth, Texas in February 2010. Compl., Ex. 2 at 4-5; Klocke Decl. ¶ 11. The remedy award was issued in April 2010. Compl., Ex. 2 at 21.

At the time of the filing of the Grievance and during the arbitration proceeding, APA represented Plaintiffs and the putative class members. *See* Compl. ¶¶ 8, 22. APA argued that

3

former TWA pilots with more junior American seniority numbers should occupy pilot positions at American ahead of Eagle pilots with more senior American seniority numbers. Klocke Decl. ¶ 10. The arbitration decision rejected APA's arguments and found that certain Eagle pilots should have assumed pilot positions at American ahead of certain former TWA pilots with less American seniority, including putative class members. Klocke Decl. ¶ 10; *see also* Compl., Ex. 1. at 26.

Plaintiffs, on behalf of themselves and the approximately 1,200 former TWA pilots whom they purport to represent, seek to vacate Arbitrator Nicolau's award. They allege that they did not receive notice of the Grievance and arbitration, and that this alleged failure to notify violated Section 153, First (j) of the RLA, 45 U.S.C. § 153, First (j). Compl. ¶¶ 28-30.

Any notice (or lack thereof) of the Grievance or the June 2009 arbitration hearing originated in Texas – at either ALPA's Euless office or, on information and belief, in the other Defendants' offices in Fort Worth. Klocke Decl. ¶¶ 7-9. None of the relevant events or omissions alleged in the Complaint occurred in this district or anywhere else in Tennessee.

## THE COURT SHOULD TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS

Under 28 U.S.C. § 1404(a), this Court is authorized "[f]or the convenience of parties and witnesses, in the interest of justice . . . [to] transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).[2] The convenience of the

---

[2] As an alternative to 28 U.S.C. § 1391(b) and (c), Plaintiffs rely on Section 3, First (q) and (p) of the Railway Labor Act ("RLA"), 45 U.S.C. § 153, First (q) and (p), to support venue here. Compl. ¶ 9. However, the RLA expressly excepts the airline industry from the application of Section 153. 45 U.S.C. §§ 181-184; *see, e.g., ABX Air, Inc. v. Airline Prof. Ass'n, Local Union No. 1224*, 266 F.3d 392, 395 (6th Cir. 2001) ("all RLA provisions under 45 U.S.C. § 151 *et seq.* apply to air carriers engaged in interstate and foreign commerce and their employees, except § 153 which is replaced by § 184"). Moreover, despite venue provisions in a particular statute, the Court retains its authority under 28 U.S.C. § 1404 to transfer this matter on *forum non conveniens* grounds where, as here, transfer would best serve the convenience of the witnesses

parties and witnesses and the interest of justice are best served by transferring this case to the Northern District of Texas – where this case might (and should) have been brought.

## I. THIS ACTION MIGHT HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF TEXAS.

A prerequisite for transferring venue under § 1404(a) is that the action "might have been brought" in the transferee district. 28 U.S.C. § 1404(a). "[S]uch a district is one where: (1) the proposed transferee district has subject matter jurisdiction, (2) the defendants are amenable to service of process, and (3) venue is proper." *McLouth Steel Corp. v. Jewell Coal & Coke Co.*, 432 F. Supp. 10, 11 (E.D. Tenn. 1976). The Northern District of Texas satisfies these requirements. First, subject matter jurisdiction exists because this action arises under the federal RLA, 45 U.S.C. §§ 151, *et seq. See* 28 U.S.C. §§ 1331 and 1337. Second, all Defendants are subject to personal jurisdiction and amenable to service in the Northern District of Texas, as they all maintain permanent and significant offices within its boundaries. Third, venue is proper in the Northern District of Texas because all Defendants reside in that "judicial district." 28 U.S.C. § 1391(b)(1) and (c). Moreover, "a substantial part of the [alleged] events or omissions giving rise to [Plaintiffs'] claim occurred" in the Northern District of Texas, including Defendants' processing of the Grievance, as well as the June 2009 and March 2010 arbitration hearings before Arbitrator Nicolau. 28 U.S.C. § 1391(b)(2).

## II. THE NORTHERN DISTRICT OF TEXAS IS THE APPROPRIATE FORUM FOR THIS LITIGATION.

This Court has "'broad discretion'" in determining whether to transfer venue under 28 U.S.C. § 1404(a). *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (citation omitted).

---

and the parties and the interests of justice. *See Belgiovine Enterprises, Inc. v. City Federal Sav. Bank*, 748 F. Supp. 33, 35 n.5 (D.D.C. 1990) ("Section 1404(a) has been held to apply to all cases, including those brought under 'special venue' statutes." (citing *Ex parte Collett*, 337 U.S. 55 (1949); *United States v. National City Lines, Inc.*, 337 U.S. 78 (1949))).

In exercising that discretion, the Court "should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of interest of justice." *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (citation and internal quotation marks omitted). Specifically, the following six factors are relevant: "(1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum." *Oakley v. Remy Int'l, Inc.*, No. 2:09-0107, 2010 WL 503125, at *4 (M.D. Tenn. Feb. 5, 2010) (granting motion to transfer putative class action) (Attachment 1 hereto); *see also Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).

As set forth below, each of these factors militates decisively in favor of transfer.

### A. The Witnesses Most Significant To This Dispute Are Located In Texas.

The witnesses in this case, including most, if not all, potential witnesses under Defendants' control, are located in the Fort Worth area. Klocke Decl. ¶ 8; Anderson Decl. ¶ 6; McCann Decl. ¶ 6. Venue in the Middle District of Tennessee is inconvenient for them, and "[t]he convenience of the witnesses is often considered to be the most important factor when determining which forum is the most convenient." *Oakley*, 2010 WL 503125, at *4. Were this case to remain in this district, "many, if not all, of Defendants' witnesses would have to travel from [Texas] to Tennessee to testify in [this] matter" if it is not resolved on dispositive motions. *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 993 (W.D. Tenn. 2010) (transferring venue in part because "many, if not all, of Defendants' witnesses would have to travel from California to Tennessee to testify in the matter"); *see also Continental First Federal, Inc. v. Watson Quality Ford, Inc.*, No. 3:08-0954, 2010 WL 1836808,

at *3 (M.D. Tenn. May 6, 2010) (considering the cost to defendant and witness of travelling to Tennessee and obtaining accommodations during trial and granting defendant's motion to transfer venue) (Attachment 2 hereto). Travel to Tennessee will also be a burden for other witnesses, including putative class members, who, according to the Complaint, "are disbursed [sic] throughout the country." Compl. ¶ 23.

> **B.** **Tennessee Has Virtually No Connection To This Litigation.**

Plaintiffs have chosen to litigate this matter in a district that is in no way connected to the events or the facts at issue. Indeed, Plaintiffs' counsel have emphasized that Tennessee is not relevant to the litigation of this case. In their Motion to be Excused from the Local Counsel Requirement of Local Rule 83.01(h)(1), they explain that it is "unlikely that there will be any evidentiary hearings necessitating counsel's appearance in [Tennessee] court," that there will be "few, if any, in-court appearances," "conference[s] can be conducted by telephone" and "[Plaintiffs'] counsel is prepared to travel." Pls.' Mot. (Docket No. 17) ¶¶ 9-10. All but one of the named Plaintiffs reside outside Tennessee, while all of the Defendants are located in the Fort Worth, Texas area. Under these circumstances, Plaintiffs cannot maintain that Tennessee is remotely significant to their convenience, their counsel's convenience, or the development of their case. "The convenience of the parties and the witnesses in this case weighs very heavily in favor of transferring venue." *Gonzales & Gonzales*, 677 F. Supp. 2d at 993 (transferring venue from Tennessee to California where defendant's "operations are located").

On the other hand, defending a case in Tennessee will be unfairly inconvenient for Defendants here. *See Oakley*, 2010 WL 503125, at *5 (finding that "the residence of the parties" favored transfer where "the only party who has a residence in Tennessee is [one] Plaintiff"); *Adair v. American Airlines, Inc.*, No. 10-901, slip op. at 3 (D.N.J. July 8, 2010) (finding inconvenience for defendants where "Defendant's [AA's] headquarters, as well as the

7

Case 3:10-cv-00494   Document 49   Filed 08/20/10   Page 7 of 13 PageID #: 162

headquarters of the Plaintiffs' union, [APA], is located in Fort Worth, Texas" and "[w]itnesses for both Plaintiffs and Defendant reside or work in Texas") (Attachment 3 hereto).

### C. Plaintiffs Concede That Very Little, If Any, Discovery Will Occur In Tennessee And The Majority Of Relevant Documents Are Located In Texas.

It is undisputed that none (or almost none) of the discovery in this case will occur in Tennessee. *See* Pls.' Mot. ¶ 8 ("[I]f any discovery is conducted, very little of it will take place in Tennessee[.]"). If there are documents relevant to the issues in this case, they most likely are located in one of the four Defendants' offices in the Fort Worth area. Klocke Decl. ¶ 8; Anderson Decl. ¶ 6; McCann Decl. ¶ 6.

### D. The Filing, Processing And Arbitration Of The Grievance Predominately Occurred In Texas.

Plaintiffs also cannot dispute that the locus of the operative facts is not in this district. All of the events alleged in the Complaint relating to the Grievance and arbitration occurred in the Northern District of Texas. Defendants administered the Flow-Through Agreement underlying this litigation at their various offices in or near Forth Worth, Texas. Klocke Decl. ¶¶ 4-5, 7; Anderson Decl. ¶ 6; McCann Decl. ¶ 6. Thus, any notice, or lack of notice, of the arbitration originated and occurred in Texas. *See Gonzales & Gonzales*, 677 F. Supp. 2d at 993 (transferring venue in part "because any business decision by [defendant] related to the alleged to [sic] breach of its obligations would have been made at [defendant's] office in Los Angeles"). Because this "'case finds its center of gravity'" in the Fort Worth area, not in Tennessee, transfer is appropriate. *Oakley*, 2010 WL 503125, at *5 (citation omitted).

### E. Texas, Not Tennessee, Has Important Interests In This Litigation.

Next, the public interest considerations of fairness and systemic integrity also weigh heavily in favor of transferring this case. Among the public interests to consider are "the local interest in having localized issues decided at home and the familiarity of the forum with the law

that will govern the case." *Oakley*, 2010 WL 503125, at *6. There are "no local interests present which would suggest a need to keep this action in Tennessee[,]" *Gonzales & Gonzales*, 677 F. Supp. 2d at 994, because the federal RLA, not Tennessee state law, is at issue. Furthermore, due to the federal nature of the dispute, the Middle District of Tennessee is no more qualified or prepared to decide the central legal issues than is the Northern District of Texas. *See Adair v. American Airlines, Inc.*, No. 10-901, slip. op. at 4 (D.N.J. July 8, 2010). Nor is one district more qualified to process the multiplicity of class action claims this case potentially involves. *See Temple v. Circuit City Stores, Inc.*, Nos. 2:05-cv-165, 2:05-cv-211, 2006 WL 2796483, at *5 (E.D. Tenn. Sept. 27, 2006) (Attachment 4 hereto).

In contrast, public considerations weigh in favor of a Texas forum. This case concerns businesses and labor unions with headquarters or responsible offices in Texas, a grievance that was filed and disputed in Texas, and an arbitration that occurred in Texas. The citizens of Texas have an interest in ensuring that Texas's major businesses and unions abide by the laws applicable to them, and that the arbitration proceedings occurring within their borders are fair and effective in resolving the dispute for all interested parties. Tennessee has no such interest here.

### F. Plaintiffs' Choice Of Forum Is Entitled To Little Deference.

Where a case is brought as a class action, like this one, "the plaintiff's choice of forum may be entitled to little deference . . . and may also be entitled to little deference where the plaintiff's chosen forum lacks any significant contact with the underlying cause of action." *Oakley*, 2010 WL 503125, at *6 (citing *George v. Kraft Foods Global, Inc.*, No. 06-cv-798-DRH, 2007 WL 853998, at *5 (S.D. Ill. Mar. 16, 2007) ("sister courts . . . have held that a plaintiff's choice of forum is entitled to no deference where, as here, an action is brought as a class action. . . . Other authorities suggest, however, that a plaintiff's choice of forum is entitled

to some deference, *albeit reduced*, even in the class-action context") (emphasis added) (Attachment 5 hereto)); *see also Wayne County Employees' Retirement System v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 976 (E.D. Mich. 2009) ("fact that this is a class action weakens the plaintiff's claim for deference to its choice of venue"); *Donia v. Sears Holding Corp.*, No. 1:07 CV 2627, 2008 WL 2323533, at *4 (N.D. Ohio May 30, 2008) ("although Donia correctly notes that the plaintiff's choice of forum is not irrelevant in the class action context, the importance of the plaintiff's choice of forum is nonetheless diminished where the plaintiff has intentionally broadened the geographic scope of the action by seeking to certify a class") (footnote omitted) (Attachment 6 hereto). This case is a putative class action, and Plaintiffs' choice of forum is therefore entitled to less deference.

Further, "the weight of [deference to Plaintiffs' choice of forum] is lessened by the fact that Plaintiffs have not chosen to litigate in their home forum, nor a forum with any connection to the facts underlying this case." *Adair v. American Airlines, Inc.*, No. 10-901, slip op. at 3 (D.N.J. July 8, 2010). Only one of the four named Plaintiffs resides in this district, and this case arises entirely from events alleged to have occurred entirely outside Tennessee. Compl. ¶¶ 11-20; Pls.' Mot. ¶ 8. In fact, more named Plaintiffs live in Missouri than in Tennessee. Compl. ¶¶ 1-4. Under these circumstances, Plaintiffs' choice of venue should be afforded little, if any, deference.

### G. Two Recent Decisions Are Instructive.

This Court's recent decision in *Oakley v. Remy International, Inc.*, confirms the propriety of transferring venue in this case. There, as here, the only connection with this district was that one of the plaintiffs resided in Tennessee. *Oakley*, 2010 WL 503125, at *5 ("the only witness who has been identified with any connection to Tennessee is Plaintiff Oakley"); *cf.* Pls.' Mot. ¶ 8 ("only one named party (Glen Stewart) resides in, is organized in, or has its principal place of

business in Tennessee."). Like this case, *Oakley* was a putative class action that arose from the administration of a collectively bargained agreement. *Oakley*, 2010 WL 503125, at *2. The *Oakley* court transferred the litigation to the District of Indiana because it was where the defendant and its employees were located and where the collectively bargained retirement plan at issue was administered. *Id.* at *5-7. This same reasoning plainly applies here. The Northern District of Texas is where Defendants, their employees, and other witnesses are located; it is where the Flow-Through Agreement and Grievance were administered and with one exception arbitrated; it is where any notice to Plaintiffs of the Grievance or arbitration occurred, or failed to occur; and it is the most convenient forum for this litigation.

A second, factually analogous case, *Adair v. American Airlines, Inc.*, No. 10-901, slip op. at 1-3 (D.N.J. July 8, 2010), also supports transferring venue in this matter. In *Adair*, a group of former TWA pilots (who are also putative class members in this matter and are represented by one of the attorneys representing Plaintiffs in this matter) challenged their furlough from American under the AA-APA collective bargaining agreement. The litigation was brought in United States District Court in New Jersey. That court on its own motion asked the parties to brief why the case should not be transferred to another forum given the lack of any apparent connection to New Jersey. After considering the parties' submissions, the court transferred the case to the Northern District of Texas, citing as relevant factors that American's headquarters, APA's headquarters, and witnesses for both the plaintiffs and defendants reside and work in Texas; the decision to furlough the plaintiffs occurred in Texas; and the records pertinent to discovery are found in Texas. For these same reasons, the Northern District of Texas is the most convenient forum in this matter.

11

## CONCLUSION

The convenience of the parties and witnesses, the locus of the operative facts, the location of documents relevant to the case, and the fact that this litigation has just begun all mandate that in the interest of justice, this case be transferred to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted,

s/Marcus C. Migliore

Marcus C. Migliore (*pro hac vice*)
James K. Lobsenz (*pro hac vice*)
AIR LINE PILOTS
  ASSOCIATION, INT'L
1625 Massachusetts Avenue, N.W.
Washington, D.C.
(202) 797-4054
(202) 797-4014 (fax)
marcus.migliore@alpa.org

Michael Hamilton (No. 010720)
PROVOST UMPHREY, LLP
2021 Richard Jones Road
Suite 300
Nashville, TN 37215
(615) 242-0199
(615) 256-5922 (fax)

Counsel for Defendant Air Line Pilots
  Association, International


s/R. Eddie Wayland

R. Eddie Wayland (No. 006045)
Douglas R. Pierce (No. 010084)
KING & BALLOW
1100 Union Street Plaza
315 Union Street
Nashville, TN 37201
(615) 259-3456
(615) 726-5417 (fax)
rew@kingballow.com

Jonathan C. Fritts (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 2004-2541
(202) 739-3000
(202) 739-3001 (fax)

Counsel for Defendant American Airlines, Inc.


s/Waverly D.Crenshaw, Jr.

Waverly D. Crenshaw, Jr. (No. 9942)
John J. Park (No. 25623)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
P. O. Box 198966
Nashville, TN 3729-8966
(615) 244-6380
(615) 244-6804 (fax)
waverly.crenshaw@wallerlaw.com

John J. Gallagher (*pro hac vice*)
Intra Germanis (*pro hac vice*)
PAUL HASTINGS JANOFSKY &
  WALKER, LLP
875 15th Street, NW
Washington, DC 20005
(202) 551-1700
(202) 551-1705 (fax)

Counsel for Defendant American Eagle
  Airlines, Inc.

August 20, 2010